[S. F. No. 14305.   In Bank.—February 10, 1932.]

THE PEOPLE, Respondent, v. K. HOVDEN COMPANY (a Corporation), Appellant.

B. D. Marx Greene, John Thompson and William Denman for Appellant.

U. S. Webb, Attorney-General, Eugene D. Bennett and Ralph W. Scott for Respondent.

THE COURT.—Defendant corporation, the proprietor of a sardine cannery at Monterey, California, with a reduction plant as an allied business, appeals from so much of a. decree in equity entered in this cause as declares the said reduction plant a nuisance and abates it by closing it for one year, during which period it is consigned to the custody of the court.

It is conceded by defendant that it took for use in said plant during a given period of time more than thirty-two and one-half per cent of the edible sardines or other fish received by it. The principal by-products of the reduc-. tion process are fish-meal, fish-oil and fertilizer. The act here involved is known as the Fish Conservation or Reduction Act passed in 1919 (Stats. 1919, p. 1203), amended from time to time and recast and supplemented in 1929 (Stats. 1929, p. 901)'. The violation of the statute is plain and undisputed. The percentage of fish processed was about seventy-nine per cent of the delivery and more than twice the minimum allowance established by the act. The case arises under section 8 of the act (Stats. 1929, pp. 906, 907) as amended in 1929, which reads as follows:

"The use of any fish or any part thereof contrary to the provisions of this act, or contrary to or in violation of any rule, regulation or order of the fish and game commission, is hereby declared to be a nuisance. Whenever the existence of such nuisance is shown to the satisfaction of the court or judge thereof by complaint filed in the name of the People of the State of California, the court or judge shall allow a temporary writ of injunction to abate and prevent the continuance or recurrence of such nuisance. If the existence of a nuisance be established in an action as provided herein, an order of abatement shall be entered as part of the judgment in the case, which order shall direct the closing of the building or place where such nuisance was maintained for a period of twelve months, and during such time, said building or place shall be and remain in the custody of the court."

Appellant's position in brief is that said section must be strictly construed and when so construed the only nuisance declared thereby is merely the excess use of fish and to correct that abuse the power of abatement extends no further than to enjoin the future use in such plant of any such excess quantities of fish. In other words, the contention is that the reduction plant itself is not a nuisance *per se* and as such it has not offended and hence may not, in the absence of a valid express declaration by the legislature that it is a nuisance, be abated to any extent by a decree of the court.

At the outset it may be observed that the property right in the fish of our waters is in the state in trust for the whole people. This fact is not disputed nor is it denied that the use of excess quantities of edible fish in a reduction plant may be declared an actionable nuisance by the legislature because of its interference with the well-recognized property right of the People. (*People* v. *Stafford Packing Co.*, 193 Cal. 719 [227 Pac. 485]; *People* v. *Monterey Fish Products Co.*, 195 Cal. 548 [38 A. L. R. 1186, 234 Pac. 398].) The above cases and the case of *People* v. *Globe Grain & Milling Co.*, 211 Cal. 121 [294 Pac. 3], disclose a definite and determined policy on the part of the People to protect their property right in the fish and also disclose a stubborn resistance to this policy by some at least of the sardine canneries. Many provisions of the act and its several amendments have been considered in these cases but the last paragraph of said section 8 pertaining to the closing of reduction plants has not been directly considered.

We see no escape, however, from the conclusion that this provision is valid and authorizes the decree here under review. An order closing the plant for a violation of the provision here seems clearly to be within the police power enjoyed by the legislature and perhaps available to it even to the extent of a permanent forfeiture of said plant. This being true, we cannot see why it is necessary to declare the plant *eo nomine* a nuisance. In fact, a reading of the whole paragraph discloses that it takes the operation of the plant, together with the use of excess fish, to constitute a nuisance. The mere presence of excess fish, without reduction, would not constitute it; hence it would seem to follow that the nuisance consists of the joint operation of the plant

and the use of the excess quantity of fish. This portion of the statute was doubtless designed not as punishment for a past act but to protect the property right of the People and to prevent future violations of the statute. (*United States* v. *Berg,* 202 Cal. 10, 13, 14 [258 Pac. 942].)

It may be conceded that in most statutes of this nature the provision expressly declares the property used for the violation to be a nuisance. But under the above reasoning, the plant is an integral part of the nuisance and included within the phrase " . . . use of any fish . . . contrary to the provisions of this act . . . ", etc., which is another way of saying that, being a valid exercise of the police power, it is unnecessary that it first be declared a nuisance, for such declaration is implied by giving the court authority to abate it. The legislature has wide powers in determining what enactments are best suited to secure the enforcement of remedial legislation. (*Shell Oil Co.* v. *Superior Court,* 213 Cal. 596 [2 Pac. (2d) 801]; 5 Cal. Jur., pp. 711–720, and cases cited.)

A case in line with the holding we have announced is *Schneider* v. *Commonwealth,* 232 Ky. 199 [22 S. W. (2d) 587], where a statute is upheld which provided for a permanent forfeiture of the property used for the unlawful sale of intoxicating liquors where the act did not in terms declare the maintenance of the property for such purpose a nuisance. See, also, *New Orleans* v. *Liberty Shop,* 157 La. 26 [40 A. L. R. 1136, 101 South. 798, 799], where a municipality sought an injunction to prevent violation of a zoning ordinance forbidding under penalty any business to be established in a residential area. The court used this language: "But the declaration that the establishment is unlawful, and that the proprietor shall, on conviction, be punished by fine or imprisonment, etc., is the same as to say that the establishment shall be deemed a nuisance." In 46 Corpus Juris, p. 653, it is said: "It is not necessary that the evil sought to be remedied be declared a nuisance by the statute itself, so long as the object to be attained was one that could properly be reached by the police power." (See, also, *Fevold* v. *Webster County,* 202 Iowa, 1019 [210 N. W. 137].)

The judgment is affirmed.

Rehearing denied.